**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZUMI ELECTRONICS LLC,    ) | **Civil Action No.:** |
| )  | |
| Plaintiff,    ) | |
| )  | |
| vs.    ) | |
| )  | |
| THE BURLINGTON INSURANCE    ) | |
| COMPANY, an Illinois Corporation,    ) | |
| )  | |
| Defendant.    ) | |
| _____  ) | |

**COMPLAINT FOR**
**DECLARATORY RELIEF RE THE DUTY TO DEFEND,**
**AND BREACH OF CONTRACT**

**JURY TRIAL DEMANDED**

In this insurance coverage suit, Plaintiff Tzumi Electronics LLC ("Tzumi") seeks a declaratory judgment that Defendant The Burlington Insurance Company ("Burlington") had and has a duty to defend Plaintiff in the action styled as *Therabody, Inc. v. Tzumi Electronics LLC*, Case No. 1:21-cv-07803-PGG-RWL pending in the United States District Court of the Southern District of New York (the "Therabody Action") and must reimburse Tzumi for all reasonable defense expenses incurred in the Therabody Action. All defense expenses bear prejudgment interest at the statutory rate under New York law at 9% per annum from the date each expense is due.

### THE PARTIES

1.  Plaintiff Tzumi Electronics LLC is a New York limited liability corporation consisting of four individual members: Ezra Erani, Gabriel Khezrie, Rena Haber, and Hillel Haber, all of whom are citizens of New York.

2.  On information and belief, Defendant Burlington is, and at all times herein mentioned was, an insurance company organized and existing under the laws of the state of Illinois and with its principal place of business at 238 International Road, Burlington, North Carolina 27215.

### JURISDICTION

3.  This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

4.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties as the Plaintiff Tzumi is a citizen of New York in that it is a New York limited liability company and has its principal place of business in New York. Defendant Burlington is a citizen of Illinois and Connecticut for purposes of diversity jurisdiction in that it is an Illinois corporation and has its principal place of business in Connecticut.

5.  The amount in controversy exceeds the sum or value of $75,000 exclusive of interests and costs based on the defense expenses Tzumi has incurred and expects to incur in the Therabody Action.

**VENUE AND CHOICE OF LAW**

6.　　Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 since Tzumi's principal place of business is in this federal judicial district.

7.　　On information and belief, Burlington sells insurance and defends lawsuits in New York, including in this District.

8.　　This federal judicial district is the place where the Policy was sold and delivered by Burlington to Tzumi in this District.

9.　　The underlying Therabody Action is pending in this District.

10.　　New York law governs Burlington's obligations to Tzumi.

**THE BURLINGTON POLICY**

11.　　Burlington issued to Tzumi a primary commercial general liability policy (Policy Number 895BW60982) (the "Policy") for the period from December 19, 2020 to December 19, 2021. A copy of the Policy is attached to Tzumi's Complaint as **Exhibit "1"**.

12.　　The Policy's "Personal and Advertising Injury Liability Insuring Agreement" provides, in pertinent part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .

13.　　The Policy defines "personal and advertising injury" as follows:

14.　　"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . .

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

. . .

> f. The use of another's advertising idea in your "advertisement"

14.     The policy defines "advertisement" as follows:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

> a. Notices that are published include material place on the Internet or on similar electronic means of communications; and

> b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

15.     The Policy includes the following relevant Exclusions:

a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

I. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

16.     The Policy includes an "Exclusion – Intellectual Property" endorsement that provides as follows:

> **D.** This insurance does not apply to claims for "any injury or damage" caused by or arising out of the actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to:

> > **1.** Copyright;
> > **2.** Patent;
> > **3.** Trade dress;
> > **4.** Trade name;
> > **5.** Trade secret; or
> > **6.** Trademark

**E.** For the purposes of this endorsement the following definition is added to the **Definitions** section:

"Any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes "bodily injury", "property damage" or "personal and advertising injury" as defined in the applicable Coverage Part.

## THE THERABODY ACTION

17.    On September 17, 2021, Theragun, Inc. filed a Complaint against Tzumi in the Therabody Action. Attached as **Exhibit "2"** is a copy of the Therabody Action Original Complaint.

18.    The Complaint was amended twice, with the final amendment on May 9, 2022. In this Second Amended Complaint ("SAC"), Theragun, Inc. was replaced by Therabody, Inc. as the plaintiff. A copy of the SAC is attached as **Exhibit "3"**.

19.    In the SAC, Therabody explicitly alleges fourteen distinct claims of patent infringement.

20.    The SAC alleges:

10. Defendants . . . **distribute, promote, market, use, sell, offer for sale, import, and/or advertise their infringing products** in or to this District and/or to businesses and individuals in this District. Therabody is further informed and believes and, based thereon, alleges that Defendants derive substantial revenue from the distribution, promotion, marketing, manufacture, use, sale, offer for sale, or import of infringing products in or to this District. . . . **Defendants . . . have engaged in continuous, systematic and substantial activities within this judicial district, including the marketing and sales of products**, in this judicial district. . . .

11. Therabody is in the business of developing, manufacturing, and selling high-quality, innovative percussive therapy devices and attachments therefor.  Therabody invests considerable time, effort and money in developing and protecting its intellectual property, including the unique and novel designs of its products.

12. Therabody is the owner of United States Patent Number 10,945,915, entitled "Portable persuccive massage device" (hereinafter the "'915 Patent") . . . .

13. Therabody is the owner of United States Patent Number 10,702,448, entitled "Percussive massage device and method of use" (hereinafter the "'448 Patent") . . . .

14. Therabody is the owner of United States Patent Number 10,918,565, entitled "Percussive massage device and method of use" (hereinafter the "'565 Patent") . . . .

16. Therabody is the owner of the '261 Patent. . . .

18. Therabody is the owner of the '182 Patent. . . .

20. Therabody is the owner of the '943 Patent. . . .

22. Therabody is the owner of the '393 Patent. . . .

24. Therabody is the owner of the '500 Patent. . . .

25. Therabody is the owner of United States Patent Number 10,557,490, entitled "Treatment element attachment system" (hereinafter the "'490 Patent") . . . .

26. Therabody is the owner of United States Patent Number 11,160,723, entitled "Portable percussive massage device" (hereinafter the "'723 Patent") . . . .

28. Therabody is the owner of the '636 Patent. . . .

30. Therabody is the owner of the '404 Patent. . . .

31. Therabody is the owner of United States Patent Number 10,857,064, entitled "Percussive Therapy Device" (hereinafter the "'064 Patent") . . . .

32. Therabody is the owner of United States Patent Number 11,160,722, entitled "Percussive Massage Device and Method of Use" (hereinafter the "'722 Patent") . . . .

51. . . . **Defendants have knowingly and actively induced the infringement** of one or more of the '915 Patent claims **by, inter alia, marketing, promoting, and offering for use the First and Third Infringing Devices,** knowingly and intending that the use of the First and Third Infringing Devices by Defendants' customers and by users infringes the '915 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First and Third Infringing Devices knowing that its purchase and use infringes one or more claims of the '915 Patent.

65. . . . **Defendants have knowingly and actively induced the infringement** of one or more of the '448 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '448 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth

Infringing Devices knowing that their purchase and use infringes one or more claims of the '448 Patent.

80. . . . **Defendants have knowingly and actively induced the infringement** of one or more of the '565 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '565 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth Infringing Devices knowing that their purchase and use infringes one or more claims of the '565 Patent.

89. As shown below, a side by side comparison of figures from Therabody's '261 Patent and the design of Defendants' First Infringing Attachment as a whole quickly reveals that **the First Infringing Attachment appears substantially the** same as Therabody's '261 Patent **to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.** Among other things, **an ordinary observer would conclude that the First Infringing Attachment has a number of the same, or very similar, features** as the design patented in the '261 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Attachment are (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to the diameter of the base), (c) have a rounded tip, and (d) have a generally circular cavity centered in the base of the attachment:

 

First Infringing Attachment

92. . . . **Defendants have knowingly and actively induced the infringement** of one or more of the '261 Patent claims **by, inter alia, marketing, promoting, and offering for use the First Infringing Attachment,** knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '261 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '261 Patent.

100. As shown below, a side by side comparison of Therabody's '182 Patent and Defendants' First Infringing Attachment quickly reveals that the design of **the First Infringing Attachment as a whole appears substantially the same as Therabody's '182**

Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. Among other things, **an ordinary observer would conclude that the First Infringing Attachment has a number of the same, or very similar, features** as the design patented in the '182 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and First Infringing Attachment are (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to the diameter of the base), (c) have a rounded tip, and (d) have a generally circular cavity centered in the base of the attachment:

 

First Infringing Attachment

103. **Defendants have knowingly and actively induced the infringement** of one or more of the '182 Patent claims **by, inter alia, marketing, promoting, and offering for use the First Infringing Attachment,** knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '182 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '182 Patent.

111. As shown below, a side by side comparison of Therabody's '943 Patent and Defendants' Second Infringing Attachment quickly reveals that **the design of the Second Infringing Attachment as a whole appears substantially the same as Therabody's '943 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.** Among other things, **an ordinary observer would conclude that the Second Infringing Attachment has a number of the same, or very similar, features** as the design patented in the '943 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Second Infringing Attachment are: (a) dome shaped, (b) sloped portions from the top attachment-side to the dome, (c) the same relative proportions of the dome to the sloped portion of the attachment, and (d) have a generally circular cavity centered in the base of the attachment:



Fig. 4                  Second Infringing Attachment

114. **Defendants have knowingly and actively induced the infringement** of one or more of the '943 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second Infringing Attachment,** knowingly and intending that the use of the Second Infringing Attachment by Defendants' customers and by users infringes the '943 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second Infringing Attachment knowing that its purchase and use infringes one or more claims of the '943 Patent.

122. As shown below, a side by side comparison of Therabody's '393 Patent and Defendants' Third Infringing Attachment quickly reveals that **the design of the Third Infringing Attachment as a whole appears substantially the same as Therabody's '393 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.** Among other things, **an ordinary observer would conclude that the Third Infringing Attachment has a number of the same, or very similar, features** as the design patented in the '393 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Third Infringing Attachment is (a) dome shaped contact surface, (b) vertical sides between the sloped portion and dome, (c) sloped portions from the vertical sides to the attachment side, (d) the same relative proportions of the three segments (domed, vertical side and sloped), and (e) have a generally circular cavity centered in the base of the attachment:



Fig. 4                  Third Infringing Attachment

125. **Defendants have knowingly and actively induced the infringement** of one or more of the '393 Patent claims **by, inter alia, marketing, promoting, and offering for use the Third Infringing Attachment,** knowingly and intending that the use of the Third Infringing Attachment by Defendants' customers and by users infringes the '393 Patent. For example, Defendants intend to

induce such infringement by, among other things, promoting users to purchase and use the Third Infringing Attachment knowing that its purchase and use infringes one or more claims of the '393 Patent.

133. As shown below, a side by side comparison of Therabody's '500 Patent and Defendants' Fourth Infringing Attachment quickly reveals that **the design of the Fourth Infringing Attachment as a whole appears substantially the same as Therabody's '500 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.** Among other things, **an ordinary observer would conclude that the Fourth Infringing Attachment has a number of the same, or very similar, features** as the design patented in the '500 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Fourth Infringing Attachment is (a) width of contact side (where it placed against a body part) is larger than the width of the attachment side, (b) width of the contact side and the length (top to bottom) are generally the same size, (c) thickness of the contact surface has the same proportions to the length and width of the attachment, (d) rounded contact surface, and (e) a generally circular cavity centered in the base of the attachment:



Fig. 2



Fourth Infringing Attachment

136. **Defendants have knowingly and actively induced the infringement** of one or more of the '500 Patent claims **by, inter alia, marketing, promoting, and offering for use the Fourth Infringing Attachment,** knowingly and intending that the use of the Fourth Infringing Attachment by Defendants' customers and by users infringes the '500 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Fourth Infringing Attachment knowing that its purchase and use infringes one or more claims of the '500 Patent.

147. **Defendants have knowingly and actively induced the infringement** of one or more of the '490 Patent claims **by, inter alia, marketing, promoting, and offering for use the Third Infringing Device,** knowingly and intending that the use of the Third Infringing Device by Defendants' customers and by users infringes the '490 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users

to purchase and use the Third Infringing Device knowing that its purchase and use infringes one or more claims of the '490 Patent.

162. **Defendants have knowingly and actively induced the infringement** of one or more of the '723 Patent claims **by, inter alia, marketing, promoting, and offering for use the First and Third Infringing Devices,** knowingly and intending that the use of the First and Third Infringing Devices by Defendants' customers and by users infringes the '723 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First and Third Infringing Devices knowing that its purchase and use infringes one or more claims of the '723 Patent.

170. As shown below, a side by side comparison of Therabody's '636 Patent and Defendants' Infringing Connector quickly reveals that **the design of the Infringing Connector as a whole appears substantially the same as Therabody's '636 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.** Among other things, **an ordinary observer would conclude that the Infringing Connector has a number of the same, or very similar, features** as the design patented in the '636 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Infringing Connector have (a) a substantially similar cylindrical shape, (b) a rim at the end opposite the bottom of the connector, (c) a flat surface on the side of cylinder, (d) a ball seated within the flat surface and positioned toward the bottom of the connector, and (e) an inclined surface from the side down to the bottom surface:



173. **Defendants have knowingly and actively induced the infringement** of one or more of the '636 Patent claims **by, inter alia, marketing, promoting, and offering for use the Infringing Connector,** knowingly and intending that the use of the Infringing Connector by Defendants' customers and by users infringes the '636 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase

and use the Infringing Connector knowing that its purchase and use infringes one or more claims of the '636 Patent.

181. As shown below, a side by side comparison of Therabody's '404 Patent and Defendants' Second Infringing Attachment quickly reveals that **the design of the Second Infringing Attachment as a whole appears substantially the same as Therabody's '404 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.** Among other things, **an ordinary observer would conclude that the Second Infringing Attachment has a number of the same, or very similar, features** as the design patented in the '404 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Second Infringing Attachment have (a) dome shaped, (b) sloped portions from the top attachment-side to the dome, (c) the same relative proportions of the dome to the sloped portion of the attachment, and (d) have a generally circular cavity centered in the base of the attachment:



Second Infringing Attachment

184. **Defendants have knowingly and actively induced the infringement** of one or more of the '404 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second Infringing Attachment,** knowingly and intending that the use of the Second Infringing Attachment by Defendants' customers and by users infringes the '404 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second Infringing Attachment knowing that its purchase and use infringes one or more claims of the '404 Patent.

198. **Defendants have knowingly and actively induced the infringement** of one or more of the '064 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '064 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth Infringing Devices knowing that their purchase and use infringes one or more claims of the '064 Patent.

213. **Defendants have knowingly and actively induced the infringement** of one or more of the '722 Patent claims **by, inter**

**alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '722 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth Infringing Devices knowing that their purchase and use infringes one or more claims of the '722 Patent.

(all emphasis added).

### BURLINGTON'S DENIAL

21.     On September 12, 2022, Tzumi notified Burlington of the underlying claim by submitting a coverage analysis letter written by its coverage counsel, Gauntlett & Associates. The letter explained why coverage arises under both offense (d) and offense (f) of the Policy's "personal and advertising injury" provisions. A copy of the coverage analysis letter is attached as **Exhibit "4"**.

22.     Burlington denied coverage via letter on November 29, 2022. A copy of the denial is attached as **Exhibit "5"**.

### ALLEGATIONS OF DISPARAGEMENT ESTABLISH A POTENTIAL FOR COVERAGE UNDER POLICY OFFENSE (d)

#### A Three-Element Test Applies to This Offense

23.     The Policy defines "Personal and advertising injury" disparagement offense as having three elements relevant here: (1) "injury . . . arising out of"; (2) "oral or written publication, in any manner, of material"; (3) "that disparages a person's or organization's goods, products or services."

24.     Each of the three elements described in the preceding paragraph was potentially met by the allegations of the Complaint and the SAC, thereby triggering Burlington's duty to defend Tzumi.

#### Element One – "Injury Arising out of" Offense (d) Is Alleged

25.     The Burlington Policy defines "personal and advertising injury" as any "injury . . . arising out of" a listed offense.

26.     "Injury . . . ar[ose] from" Tzumi's implicit disparagement of Therabody

and its products. Therabody's allegations include contentions that "an ordinary observer would conclude that the [Tzumi] Attachment has a number of the same, or very similar, features as the design patented . . . that contribute to an overall appearance that is substantially the same [as Therabody's product]." **Exhibit "3", ¶¶** 89, 100, 111, 122, 133, 170, 181; see also **Exhibit "2",** **¶¶** 80, 91, 102, 113, 124.

27.     By using its similar design, Tzumi has asserted itself as the proper owner of those design elements and the proper distributor of goods associated with such elements.

28.      "Arising out of" is not defined in the Burlington Policy. But it includes policy language that is of much broader significance than "caused by." New York law recognizes the term "arising out of" as meaning "originating from," "incident to," or "having connection with" and it should be construed broadly to require only "*some* causal relationship between the injury and the risk for which coverage is provided," not proximate causation.

29.     Therabody's alleged injuries "originated from," were "incident to," or "had a connection with" Tzumi's disparaging assertions because "[a] side by side comparison of figures from Therabody's . . . Patent and the design of Defendants' . . . Attachment as a whole quickly reveals that the [product] appears substantially the same as Therabody's [product] to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." **Exhibit "3", ¶¶** 89, 100, 111, 122, 133, 170, 181; see also **Exhibit "2", ¶¶** 80, 91, 102, 113, 124.

30.     In this way, Tzumi potentially makes a public statement that its products are the only legitimate ones on the market, thereby disparaging Therabody and its products.

31.     Here, Therabody alleges injury flowing from those public statements that could potentially "deceive [a consumer], inducing him to purchase [Tzumi's product] supposing it to be [Therabody's]." **Exhibit "3", ¶¶** 89, 100, 111, 122, 133, 170, 181; see also **Exhibit "2",** **¶¶** 80, 91, 102, 113, 124.

32.     The "injury arising out of" element is met in the Therabody Action by the claimants' allegations that the "injury" they sustained "originated from," was "incident to" or

"had a connection with" Tzumi's disparagement of competing products and producers.

33.     Thus, the injury alleged in the Therabody Action potentially "arises out of" offense (d).

### Element Two – "Oral or Written Publication of Material" Is Alleged

34.     The Therabody Action alleges that Tzumi made false or misleading statements of fact in its advertisements and on its labels.

35.     The Therabody Action allegations create the reasonable inference that Tzumi published disparaging statements about its competitors to retailers and consumers. The alleged "injury" was one "arising out of" "publication of material" by Tzumi, according to the allegations of the SAC in that "Defendants . . . distribute, promote, market, use, sell, offer for sale, import, and/or advertise their infringing products . . . to businesses and individuals in this District." **Exhibit "3",** ¶ 10; see also **Exhibit "2", ¶ 10.**

36.     Therabody also repeatedly alleges that Tzumi markets and promotes its accused products to customers. "Defendants have knowingly and actively induced the infringement of one or more of the [designs] by, *inter alia*, marketing, promoting, and offering for use the . . . Infringing Devices [to] Defendants' customers . . . ." **Exhibit "3",** ¶¶ 51, 65, 80, 92, 103, 114, 125, 136, 147, 162, 173, 184, 198, 213; see also **Exhibit "2",** ¶¶ 42, 56, 71, 83, 94, 105, 116, 127.

37.     Thus, Tzumi's widespread publication of materials in its marketing and advertising is expressly alleged in the SAC. The disparaging nature of these statements in fully explained in the section below.

### Element Three – "Disparages a Person's or Organization's Goods, Products or Services" Is Alleged

38.     "Disparagement" coverage under offense (d) provides coverage for "damages because of . . . injury . . . arising out of . . . oral, written or electronic publication of material that . . . **disparages** a person's or organization's goods, products or services." (emphasis added).

39.     Therabody contends in the SAC that it is the only company properly associated with the design which Tzumi also allegedly uses. **Exhibit "3", ¶¶** 12, 13, 14, 16, 18, 20, 22, 24, 25, 26, 28, 30, 31, 32; see also **Exhibit "2", ¶¶** 12, 13, 14, 16, 18, 20, 22, 24.

40.     Through the use of confusingly similar design, Tzumi holds itself out as the only legitimate source of goods with those indistinguishable innovative and unique features. The confusingly similar design targeted the company whose original designs were allegedly copied.

41.     Damage flows from these falsely asserted negative comparisons that denigrated Therabody's products.

42.     Consumers chose Tzumi over Therabody because Tzumi's disparagement discredited Therabody by painting Therabody's products as illegitimate, thereby "promoting users to purchase and use [Tzumi's] Infringing Devices." **Exhibit "3", ¶¶** 51, 65, 80, 92, 103, 114, 125, 136, 147, 162, 173, 184, 198, 213; see also **Exhibit "2", ¶¶** 42, 56, 71, 83, 94, 105, 116, 127.

43.     The allegations in the Therabody Action establish the factual basis for coverage under Burlington's "disparagement" Policy offense. To the extent there is any *factual* dispute about what occurred that would evidence disparagement, that possibility alone triggers a duty to defend.

### ALLEGATIONS OF USING ANOTHER'S ADVERTISING IDEA ESTABLISH A POTENTIAL FOR COVERAGE UNDER POLICY OFFENSE (f)

#### A Six-Element Test Applies to This Offense

44.     The test for "Personal and advertising injury" offense (f) contains six elements: (1) "injury . . . arising out of;" (2) the "use;" (3) of "another's;" (4) "advertising idea;" (5) "in your;" and (6) "'advertisement.'" Further, as with the "disparagement" offense,

45.     The Policy does not define the terms "advertising" or "advertising idea."

46.     The Policy defines "Advertisement," in pertinent part, as "a notice that is broadcast or published to the general public or specific market segments about your goods,

products or services for the purpose of attracting customers or supporters."

47.     Each element of the offense is met by the allegations contained in the Original Complaint and the SAC.

### Element One – "Injury Arising out of" Offense (f) Is Alleged

48.     The complaint assertions include that Therabody "invests considerable time, effort and money in developing and protecting . . . the unique and novel designs of its products." **Exhibit "3", ¶** 11; see also **Exhibit "2", ¶** 11.

49.     "Injury . . . ar[ose] from" Tzumi's alleged marketing of its products by promoting these "unique and novel designs" that it allegedly used in its own products.

50.     Resulting injury is alleged by the assertion that "the resemblance is such as to deceive [a consumer], inducing him to purchase [a Tzumi product] supposing it to be [a Therabody product]." **Exhibit "3", ¶¶** 89, 100, 111, 122, 133, 170, 181; see also **Exhibit "2", ¶¶** 80, 91, 102, 113, 124. This allegation demonstrates that the injury "originat[ed] from" or "ha[s] connection with" Tzumi's decision to market its products in a way that highlights the "unique and novel designs of [Therabody's] products" in a manner likely "to deceive [a consumer], inducing him to purchase [a Tzumi product] supposing it to be [a Therabody product]." **Exhibit "3", ¶¶** 89, 100, 111, 122, 133, 170, 181; see also **Exhibit "2", ¶¶** 80, 91, 102, 113, 124. Thus, the connection between Tzumi's promotion of its products possessing the "unique and novel designs" allegedly owned by Therabody and the resulting injury satisfies the definition of "arising out of" under New York law.  This is the "use of another's advertising idea in [Tzumi's] 'advertisement'" at issue in this case. Therefore, "injury . . . ar[ose] from" Tzumi's offense (f) activity, creating a duty to defend.

### Element Two – An "Advertising Idea" Is Alleged

51.     The Policy does not define the term "advertising idea." However, a reasonable insured in Tzumi's position would understand the term to have its plain and ordinary meaning generally encompassing "the manner in which one advertises its goods."

52.     The "advertising idea" in this case is Tzumi's alleged marketing of its

products in a manner that highlights the "unique and novel designs" that Therabody claims to own. **Exhibit "3",** ¶ 11; see also **Exhibit "2",** ¶ 11.

53.     This conclusion is supported by the SAC's allegations Tzumi marketed its products in such manner that "an ordinary observer would conclude that [Tzumi's products] ha[ve] a number of the same, or very similar, features . . . that contribute to an overall appearance that is substantially the same [as Therabody's products]." **Exhibit "3",** ¶¶ 89, 100, 111, 122, 133, 170, 181; see also **Exhibit "2",** ¶¶ 80, 91, 102, 113, 124.

54.     Thus, the advertisement of these "unique and novel designs" is the primary means by which Tzumi allegedly convinced consumers to purchase its products instead of Therabody's.

55.     The allegedly misleading marketing scheme is therefore the primary "manner in which [Tzumi] advertises its goods," thereby satisfying New York law's understanding of what constitutes an "advertising idea."

### Element Three – of "Another's" Is Alleged

56.     The Policy does not define the policy term "another's." However, a reasonable insured in Tzumi's position would understand the term to mean something that originates with someone other than the insured.

57.     The SAC directly asserts that the "unique and novel designs" are properly owned by Therabody. **Exhibit "3",** ¶¶ 12, 13, 14, 16, 18, 20, 22, 24, 25, 26, 28, 30, 31, 32; see also **Exhibit "2",** ¶¶ 12, 13, 14, 16, 18, 20, 22, 24.

58.     Therabody is an entity distinct from Tzumi, so Therabody's asserted ownership satisfies the "of another's" requirement.

### Element Four – "Use" Is Alleged

59.     The Policy does not define the policy term "use." In the context of offense (f), the term "use" is not limited to the legal concept of "misappropriation" and instead embraces the broader layman concept of "misuse."

60.     A reasonable insured in Tzumi's position would understand the term to

mean "put into action or service" or "the act or practice of employing something," as "use" is defined in dictionaries.

61.    The SAC repeatedly alleges that Tzumi "used" the above-described "advertising idea." These instances include the following allegations:

51. **Defendants have knowingly and actively induced the infringement** of one or more of the '915 Patent claims **by, inter alia, marketing, promoting, and offering for use the First and Third Infringing Devices,** knowingly and intending that the use of the First and Third Infringing Devices by Defendants' customers and by users infringes the '915 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First and Third Infringing Devices knowing that its purchase and use infringes one or more claims of the '915 Patent.

65. **Defendants have knowingly and actively induced the infringement** of one or more of the '448 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '448 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth Infringing Devices knowing that their purchase and use infringes one or more claims of the '448 Patent.

80. **Defendants have knowingly and actively induced the infringement** of one or more of the '565 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '565 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth Infringing Devices knowing that their purchase and use infringes one or more claims of the '565 Patent.

92. **Defendants have knowingly and actively induced the infringement** of one or more of the '261 Patent claims **by, inter alia, marketing, promoting, and offering for use the First Infringing Attachment,** knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '261 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '261 Patent.

103. **Defendants have knowingly and actively induced the infringement** of one or more of the '182 Patent claims **by, inter alia, marketing, promoting, and offering for use the First Infringing Attachment,** knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '182 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '182 Patent.

114. **Defendants have knowingly and actively induced the infringement** of one or more of the '943 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second Infringing Attachment,** knowingly and intending that the use of the Second Infringing Attachment by Defendants' customers and by users infringes the '943 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second Infringing Attachment knowing that its purchase and use infringes one or more claims of the '943 Patent.

125. **Defendants have knowingly and actively induced the infringement** of one or more of the '393 Patent claims **by, inter alia, marketing, promoting, and offering for use the Third Infringing Attachment,** knowingly and intending that the use of the Third Infringing Attachment by Defendants' customers and by users infringes the '393 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Third Infringing Attachment knowing that its purchase and use infringes one or more claims of the '393 Patent.

136. **Defendants have knowingly and actively induced the infringement** of one or more of the '500 Patent claims **by, inter alia, marketing, promoting, and offering for use the Fourth Infringing Attachment,** knowingly and intending that the use of the Fourth Infringing Attachment by Defendants' customers and by users infringes the '500 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Fourth Infringing Attachment knowing that its purchase and use infringes one or more claims of the '500 Patent.

147. **Defendants have knowingly and actively induced the infringement** of one or more of the '490 Patent claims **by, inter alia, marketing, promoting, and offering for use the Third Infringing Device,** knowingly and intending that the use of the Third Infringing Device by Defendants' customers and by users infringes the '490 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Third Infringing Device knowing that its purchase and use infringes one or more claims of the '490 Patent.

162. **Defendants have knowingly and actively induced the infringement** of one or more of the '723 Patent claims **by, inter alia, marketing, promoting, and offering for use the First and Third Infringing Devices,** knowingly and intending that the use of the First and Third Infringing Devices by Defendants' customers and by users infringes the '723 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First and Third Infringing Devices knowing that its purchase and use infringes one or more claims of the '723 Patent.

173. **Defendants have knowingly and actively induced the infringement** of one or more of the '636 Patent claims **by, inter alia, marketing, promoting, and offering for use the Infringing Connector,** knowingly and intending that the use of the Infringing Connector by Defendants' customers and by users infringes the '636 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Infringing Connector knowing that its purchase and use infringes one or more claims of the '636 Patent.

184. **Defendants have knowingly and actively induced the infringement** of one or more of the '404 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second Infringing Attachment,** knowingly and intending that the use of the Second Infringing Attachment by Defendants' customers and by users infringes the '404 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second Infringing Attachment knowing that its purchase and use infringes one or more claims of the '404 Patent.

198. **Defendants have knowingly and actively induced the infringement** of one or more of the '064 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '064 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth Infringing Devices knowing that their purchase and use infringes one or more claims of the '064 Patent.

213. **Defendants have knowingly and actively induced the infringement** of one or more of the '722 Patent claims **by, inter alia, marketing, promoting, and offering for use the Second and Fourth Infringing Devices,** knowingly and intending that the use of the Second and Fourth Infringing Devices by Defendants' customers and by users infringes the '722 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Fourth Infringing Devices knowing that their purchase and use infringes one or more claims of the '722 Patent.

**Exhibit "3"** (all emphasis added); see also **Exhibit "2", ¶¶** 42, 56, 71, 83, 94, 105, 116, 127.

62.     The SAC alleges Tzumi has marketed its products by highlighting the "unique and novel designs" allegedly owned by Therabody. Each of the above allegations therefore satisfies the requirement that Tzumi "put into action or service" the "advertising idea" at issue. Thus, Tzumi's marketing activities consisted of "the act or practice of employing [the 'advertising idea']," thereby satisfying the "use" element.

### Element Five – "In Your" Is Alleged

63.     The Policy does not define the policy term "in your." However, the Policy reasonably uses the word "your" to refer to the Named Insured, i.e., Tzumi itself. In context, the phrase "in your 'advertisement'" must refer to one of Tzumi's "advertisements."

64.     The SAC alleges that the "advertising idea" of highlighting the "unique and novel designs" allegedly owned by Therabody in Tzumi's above-referenced "marketing, promoting, and offering for use" of products to its customers. **Exhibit "3", ¶¶** 51, 65, 80, 92, 103, 114, 125, 136, 147, 162, 173, 184, 198, 213; see also **Exhibit "2", ¶¶** 42, 56, 71, 83, 94, 105, 116, 127.

65.     The "in your" element of the offense is therefore satisfied by the complaint allegations.

### Element Six – "Advertisement" Is Alleged

66.     The Policy defines "advertisement" as follows:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

> a. Notices that are published include material place on the Internet or on similar electronic means of communications; and

> b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

67.     Therabody repeatedly alleges that Tzumi markets and promotes its

accused products to customers. "Defendants have knowingly and actively induced the infringement of one or more of the [designs] by, *inter alia*, marketing, promoting, and offering for use the . . . Infringing Devices [to] Defendants' customers . . . ." **Exhibit "3",** ¶¶ 51, 65, 80, 92, 103, 114, 125, 136, 147, 162, 173, 184, 198, 213; see also **Exhibit "2",** ¶¶ 42, 56, 71, 83, 94, 105, 116, 127.

68.    The SAC alleges that Tzumi's marketing strategy "promot[ed] users to purchase and use" its products. **Exhibit "3",** ¶¶ 51, 65, 80, 92, 103, 114, 125, 136, 147, 162, 173, 184, 198, 213; see also **Exhibit "2",** ¶¶ 42, 56, 71, 83, 94, 105, 116, 127.

69.    Additionally, Tzumi notified Burlington in its coverage analysis letter of Tzumi's online marketing, including on its own website ([https://tzumi.com](https://tzumi.com)) and Instagram, that used the "advertising idea" at issue. **Exhibit "4",** pp. 14–15/21.

70.    Both the activity described in the SAC and the online marketing explained to Burlington in Tzumi's coverage analysis letter independently satisfy the Policy's requirements that an "advertisement" be (1) "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services" and (2) "for the purpose of attracting customers or supporters."

71.    Therefore, every aspect of the Policy's "advertisement" definition is satisfied.

## COUNT 1

### Declaratory Relief – Duty to Defend

72.    Tzumi incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

73.    A valid contract exists between Tzumi and Burlington, namely the Policy.

74.    Tzumi fully performed all required obligations and conditions to be performed by it under the Policy including paying the very substantial Policy premium.

75.    By selling the Policy, Burlington agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in the Policy.

76.     The complaints in the Therabody Action alleged facts potentially implicating "personal and advertising injury" coverage under the Policy, thereby triggering Burlington's obligation to defend Tzumi.

77.     Burlington was required to provide for Tzumi's defense throughout the Therabody Action.

78.     Burlington has denied that the Therabody Action alleged facts potentially implicating coverage under the Policy and it has asserted that exclusions would eliminate any defense duty that otherwise existed.

79.     An actual bona fide controversy exists between Tzumi and Burlington that requires judicial declaration by this Court of the parties' rights and duties under the Policy with respect to: (1) whether Burlington has a duty to defend Tzumi in the Therabody Action; and (2) whether Burlington is required to reimburse Tzumi for defense expenses Tzumi has incurred to date in the Therabody Action.

## COUNT 2

### Breach of Contract

80.     Tzumi incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

81.     A valid contract exists between Tzumi and Burlington, namely the Policy.

82.     Tzumi fully performed all of the obligations and conditions to be performed by it under the Policy including paying the very substantial Policy premium.

83.     By selling the Policy, Burlington agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in the Policy.

84.     The complaints in the Therabody Action alleged facts potentially implicating "personal and advertising injury" coverage under the Policy, thereby triggering Burlington's obligation to defend Tzumi.

85.     No exclusions excuse Burlington's failure to defend Tzumi in the Therabody Action.

86.     Burlington has refused to defend Tzumi in the Therabody Action, thereby breaching its policy contract.

87.     Burlington is obligated under the Policy to reimburse all defense expenses Tzumi incurred in the Therabody Action, including damages, attorneys' fees, and costs, as well as interest.

88.     Burlington breached its duty to defend Tzumi in the Therabody Action

89.     As a result of that breach, Tzumi has been damaged in an amount to be established at trial including defense attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tzumi prays for judgment against Defendant Burlington as follows:

1.     A judicial declaration that Burlington has a duty under the Policy to defend Tzumi in the Therabody Action.

2.     A judicial declaration that Burlington breached its contractual obligations under the Policy to defend Tzumi in the Therabody Action.

3.     A judicial declaration that Burlington must reimburse Tzumi for the defense expenses Tzumi incurred to date in the Therabody Action.

4.     An award for Tzumi's reasonable attorneys' fees and costs incurred in this lawsuit.

5.     An award for pre-judgment interest at the statutory rate on all defense invoices from the date of each invoice.

6.     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Tzumi Electronics LLC demands a trial by jury of all issues so triable.


DATED:  December 6, 2022            Respectfully submitted,


**GAUNTLETT & ASSOCIATES**
David A. Gauntlett, *pro hac vice pending*
James A. Lowe, *pro hac vice pending*
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:  (949) 553-1010
Facsimile:  (949) 553-2050
dag@gauntlettlaw.com
jal@gauntlettlaw.com

**THE KILLIAN FIRM, P.C.**

By:  /s/ Eugene Killian, Jr. Eugene
Killian, Jr., Esq.  [EK-9972]
48 Wall Street, 11th Floor
New York, NY  10005
Telephone:  (212) 618-1409
Facsimile:  (212) 618-1705
ekillian@tkfpc.com
        -and-
555 Route 1 South, Suite 420 Iselin,
NJ  08830-3151 Telephone:  (732)
912-2100 Facsimile:  (732)
912-2101 ekillian@tkfpc.com


Attorneys for Tzumi Electronics LLC